| NOTICE |
|---|
| This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1). |

2020 IL App (4th) 180399-U

NO. 4-18-0399

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 12, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| LEVI NADOLNY, | ) | No. 17CF141 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brien J. O'Brien, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's sentence is affirmed where the trial court relied on proper and relevant factors in aggravation and mitigation.

¶ 2    In August 2017, defendant pleaded guilty to one count of methamphetamine possession, a Class 3 felony (720 ILCS 646/60(a), (b)(1) (West 2016)), and one count of driving while license revoked, a Class 4 felony (625 ILCS 5/6-303(d) (West 2016)). The trial court sentenced defendant to prison for concurrent extended terms of eight years and six years, respectively. Defendant appeals his sentences, claiming they are excessive. We disagree and affirm.

¶ 3                          I. BACKGROUND

¶ 4    On April 21, 2017, the State charged defendant with methamphetamine possession (720 ILCS 646/60(a), (b)(1) (West 2016)) (count I) and aggravated fleeing or attempting to elude

a peace officer (625 ILCS 5/11-204.1(a)(4) (West 2016)) (count II). Later, on July 21, 2017, the State added a charge of driving while license revoked (625 ILCS 5/6-303(d) (West 2016)) (count III). The charges stemmed from two incidents, one on April 12, 2017, and one on April 13, 2017. On April 12, 2017, Mattoon police officer Devin Patterson attempted to make a traffic stop of a vehicle. The unknown driver of that vehicle sped away, leading to a high-speed police pursuit for approximately nine miles before the police called off the chase. Patterson recognized the vehicle as one he had stopped on multiple occasions. He knew the car was owned by Ryan Cole, whom Patterson had never met, but often driven by multiple individuals. Patterson asked various individuals who they believed had been driving Cole's vehicle that day. Two people reported that defendant had Cole's vehicle.

¶ 5        On April 13, 2017, Officer Patterson was conducting surveillance, looking for Tyler Lovekamp on a separate outstanding warrant. Patterson saw a male and a female get into Lovekamp's car with the male driving. Patterson conducted a traffic stop of the vehicle and discovered the male driver was defendant, not Lovekamp. Patterson discovered defendant was driving on a revoked license, had an outstanding warrant, and was suspected to be the driver of the high-speed pursuit the day before. Patterson recovered a Nike backpack, which defendant admitted was his, in Lovekamp's vehicle. Inside the backpack, Patterson found a scale with a white residue on it. The residue later tested positive for methamphetamine.

¶ 6        On August 7, 2017, defendant pleaded guilty in an open plea agreement to methamphetamine possession (count I) and driving while license revoked (count III) in exchange for the State's dismissal of aggravated fleeing or attempting to elude a peace officer (count II) and other separately filed charges. The trial court admonished defendant regarding the offenses and

the potential range of punishment for each. Defendant stated he understood there had been no agreement as to the length of his sentence. The court accepted defendant's plea.

¶ 7        At the plea hearing, the trial court granted defendant's request to be released on his own recognizance for the sole purpose of participating in inpatient treatment. Defendant successfully completed inpatient treatment in October 2017. The court continued defendant's release on his own recognizance pending sentencing to continue outpatient treatment.

¶ 8        On January 10, 2018, the trial court conducted the sentencing hearing. Officer Patterson testified to the events on April 12 and 13, 2017.

¶ 9        Mattoon police officer Jeff Wines testified that on January 23, 2017, he attempted to effectuate a traffic stop on a vehicle that defendant was driving for driving the wrong way on a one-way street. Defendant abandoned the vehicle and fled on foot. He was not apprehended.

¶ 10       Coles County Court Services Officer Jeremy Shores testified he worked with defendant as his pretrial officer. On November 17, 2017, defendant submitted to a drug test, which was negative. After November 17, 2017, defendant missed four calls and was unsuccessfully discharged from treatment on December 8, 2017. As a result, defendant was the subject of an outstanding warrant due to this pretrial violation.

¶ 11       The State presented the following exhibits: (1) defendant's driver's license abstract showing his license was revoked and (2) Officer Patterson's dashcam video of the April 12, 2017, high-speed pursuit of Cole's vehicle.

¶ 12       Defendant did not present any evidence. The State recommended an eight-year prison term on the methamphetamine possession conviction and a concurrent six-year term on the driving while license revoked conviction. Defendant requested two concurrent terms of 30 months' high-risk probation.

¶ 13    After considering the evidence presented, the trial court stated:

"Okay. Thank you. All right. Having considered the evidence presented today; the Presentence Investigation report [(PSI)]; having considered the current financial impact of a sentence to the Department of Corrections; having considered the evidence offered in aggravation and mitigation; the arguments with respect to sentencing alternatives; considering the history, character, and attitude of the defendant; and also considering the fact that he opted not to make a statement of allocution, I find the following factors in mitigation to exist. One, that the defendant's conduct neither caused nor threatened—threatened serious physical harm to another; two, that the defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another. I know an argument was presented that additional factors in mitigation exist in this case. I do not find any of those factors to exist. The factors in aggravation, defendant's obvious history of prior criminal activity and the deterrent factor, I think, is particularly applicable here that a sentence to the Department of Corrections is necessary to deter others from committing the same crime. I specifically find that the factor in mitigation suggesting that [defendant] is particularly likely to comply with a term of probation does not apply here, and I think it is evident from his past criminal history why that is the case. As Ms. Wolf [(Assistant State's Attorney)] pointed out, [defendant] has been provided the opportunity for many community-based sentences, and on almost every occasion, he has been unsuccessful. He has been unsuccessfully discharged from probation, conditional discharge, or supervision on at least five occasions, if not six. I understand the

- 4 -

argument presented today that, you know, the root of this problem is addiction, and I think that in some respects tends to explain the conduct, but it doesn't justify it. I understand why the evidence was presented with respect to factors in aggravation, that being the high-speed chase, Officer Wines other encounter with [defendant] where it was suggested that he fled. Quite frankly, I don't think I even need to consider that. *** What I need to consider here primarily is the past criminal history, the multiple failures to comply with community-based sentencing, the fact that [defendant] is without question a danger to this community, and probably to himself as well, but I believe that, under these circumstances, sentences to the Department of Corrections are necessary, appropriate, and really are the only options here for [defendant], so all of those things being said ***."

The court sentenced defendant to eight years in prison on count I and to a concurrent six-year prison term on count III.

¶ 14 On April 12, 2018, defendant filed a motion to reconsider his sentence, claiming it was excessive. The trial court denied defendant's motion.

¶ 15 This appeal followed.

¶ 16 II. ANALYSIS

¶ 17 Defendant claims his sentences are "greatly at variance with" and "manifestly disproportionate to" the offenses to which he pleaded guilty, particularly so considering his addiction to substances. He claims the trial court erroneously considered his drug addiction as a factor in aggravation, rather than as a factor in mitigation. He also claims the court abused its discretion by imposing extended terms given the nature and underlying facts of the particular offenses. And finally, he claims the court held against him the fact he declined to make a statement

in allocution. He requests this court either reduce his sentences to non-extended terms or, in the alternative, remand for a new sentencing hearing.

¶ 18 The State claims defendant forfeited these errors by not raising them in the trial court proceedings. Defendant counters the State's claim of forfeiture by suggesting we consider the errors as plain errors. The plain-error doctrine is a narrow and limited exception to the general forfeiture rule allowing a reviewing court to consider a forfeited issue that affects substantial rights. *People v. Herron*, 215 Ill. 2d 167, 177-79 (2005). In the sentencing context, we will review an error that is not properly preserved as plain error where (1) the evidence is closely balanced or (2) the error is so fundamental that it may have deprived the defendant of a fair sentencing hearing. *People v. Thomas*, 178 Ill. 2d 215, 251 (1997). The burden of persuasion remains with defendant under both prongs of the plain-error test, and the first step is to determine whether any error occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009).

¶ 19 Generally, we review the trial court's sentencing determination for an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A "sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000) (citing *People v. Fern*, 189 Ill. 2d 48, 54 (1999)).

¶ 20 Defendant pleaded guilty to methamphetamine possession, a Class 3 felony (720 ILCS 646/60(a), (b)(1) (West 2016)), and driving while license revoked, a Class 4 felony (625 ILCS 5/6-303(d) (West 2016)). A trial court may impose an extended-term sentence when defendant has previously been convicted of a similar class felony or higher within the prior 10 years, excluding time spent in custody. 730 ILCS 5/5-5-3.2(b)(1) (West 2016). Defendant does not

dispute that he qualified for extended-term sentences based on his criminal record. Nevertheless, he claims the court abused its discretion in imposing extended terms to an excessive degree. Defendant poses three bases for his claim. First, defendant contends the court's imposition of an extended term was an abuse of discretion when the court considered defendant's drug addiction as a factor in aggravation, rather than a factor in mitigation. Second, he contends his sentences run contrary to the nature of the offenses. And third, he contends the court considered his decision not to make a statement in allocution as a factor in aggravation.

¶ 21　　　　As an exception to our usual abuse-of-discretion standard of review for sentencing claims, we apply a *de novo* standard when deciding whether the trial court relied upon an improper factor when imposing a sentence. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103. The defendant bears the burden to affirmatively establish the sentence was based on an improper factor, and we will not reverse a sentence unless it is evident the court relied upon an improper factor. *Id.* We presume a trial court based its sentencing determination on proper legal reasoning and considered the appropriate factors before it. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18.

¶ 22　　　　Here, defendant has failed to persuade us this presumption should be overcome in this case. Indeed, the record expressly reveals the court noted defendant's addiction. The court stated it "underst[ood] the argument presented today that, you know, the root of this problem is addiction, and *** in some respects [that] tends to explain the conduct, but it doesn't justify it." The court considered as factors in mitigation the lack of threat of serious physical harm to another and the fact defendant did not contemplate such. However, after weighing the mitigating evidence against defendant's criminal background, his multiple failures of complying with community-based sentencing, the perceived danger he posed to the community and to himself, and the need for deterrence, the court determined the imposition of extended-term sentences was

"necessary, appropriate, and really [was] the only option[ ] here for [defendant]." Moreover, defendant's addiction did not necessarily lead to the conclusion that he would be entitled to lenient treatment, especially where he had been given multiple opportunities to change his life but failed to do so. See *People v. Whealon*, 185 Ill. App. 3d 570, 573 (1989).

¶ 23    As this court has noted, the Unified Code of Corrections (Unified Code) (730 ILCS 5/1-1-1 *et seq.* (West 2016)) does not explicitly identify drug addiction as a factor in mitigation or aggravation. *Sturgeon*, 2019 IL App (4th) 170035, ¶ 105; 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2016). It bears repeating that our supreme court has addressed this "double-edged sword," *i.e.*, the dichotomy of whether to consider a history of addiction as a factor in mitigation or one in aggravation (see *People v. Mertz*, 218 Ill. 2d, 1, 83 (2005)), as follows:

> " '[Defendant's] premise is that since drugs are partly to blame for his actions, the defendant is somehow less culpable and should not suffer the ultimate penalty for his criminal behavior. Simply stated, the sentencing judge was under no legal obligation to subscribe to this suggestion. To the contrary, the sentencing judge was free to conclude, under the circumstances, that defendant's drug history simply had no mitigating value but was, in fact, aggravating.' " *Sturgeon*, 2019 IL App (4th) 170035, ¶ 105 (quoting *People v. Shatner*, 174 Ill. 2d 133, 160 (1996)).

¶ 24    As the defendant in *Sturgeon* argued, defendant here argues the trial court "ignored the fact that repeated relapses are part of the nature of the disease of addiction, failed to acknowledge the patently obvious connection between [his] criminal record and his addiction, and, in turn, weaponized his addiction against him." As this court did in *Sturgeon*, we likewise reject defendant's argument.

¶ 25      The record indicates the trial court carefully considered defendant's addiction, as well as his criminal history and his prior unsuccessful community-based sentences. Accordingly, the court did not "weaponize" defendant's addiction while sentencing him. Rather, the court could have concluded defendant's drug addiction increased the need to protect society and himself from harm and increased the need for deterrence. See *Sturgeon*, 2019 IL App (4th) 170035, ¶ 108. This was not improper.

¶ 26      We likewise find no error in the trial court's sentencing as it relates to the nature and circumstances of the crimes. The court specifically considered defendant's criminal history, his "multiple failures to comply with community-based sentencing," the fact that he "is without question a danger to [the] community," and the need for deterrence as aggravating factors. The court most likely noticed a record demonstrating defendant's resistance to correction. See *People v. Robinson*, 89 Ill. 2d 469, 476 (1982) (interpreting section 5-5-3.2(b)(1) of the Unified Code stating, "The aim of recidivist statutes is to impose harsher sentences on offenders whose repeated convictions have shown their resistance to correction."). Here, the court imposed sentences within the statutory range provided by the legislature and the court was within its discretion in assigning what weight each factor should be given.

¶ 27      Finally, defendant claims the trial court improperly considered his decision not to make a statement in allocution as a factor in aggravation. We disagree with defendant's interpretation of the court's pronouncement. At the start of its oral decision, the court specifically identified what it had considered in making its sentencing decision, including the PSI, the evidence offered, the arguments, "the history, character, and attitude of the defendant," and "the fact that he opted not to make a statement of allocution." The court then clearly identified the "following factors in mitigation," and subsequently listed "[t]he factors in aggravation." Defendant's decision

not to speak was included in neither. When considering the entire context of the court's pronouncement, it is clear the court did not use defendant's silence against him. The court's mention that it did not have a statement in allocution before it to consider, does not necessarily equate to the court's improper application of the absence of defendant's statement. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. In doing so, we find no error.

¶ 28    We find the trial court did not rely upon improper factors when sentencing defendant. Accordingly, we find the court did not abuse its discretion in imposing the eight-year and concurrent six-year extended-terms.

¶ 29    Defendant alternatively argues he was denied effective assistance of trial counsel for failing to raise these challenges. However, as we have found no error, counsel cannot be deemed ineffective for failing to raise these issues below. In light of this finding, we must necessarily reject defendant's assertion of plain error and his claim that his trial counsel was ineffective. See *People v. Dat Tan Ngo*, 388 Ill. App. 3d 1048, 1059 (2008) (concluding because there was no error, the court need not address the defendant's claim that counsel was ineffective).

¶ 30                                III. CONCLUSION

¶ 31    For the foregoing reasons, we affirm the trial court's judgment.

¶ 32    Affirmed.